# Exhibit 1



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

1723 Wisconsin Avenue LLC, et al.
_____
                                         Plaintiff

vs.                                      Case Number   2015 CA 008296 B
                                                      _____

Ana Marinovic, Successor Trustee
_____
                                         Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Russell S. Drazin
_____
Name of Plaintiff's Attorney

4400 Jenifer Street, NW, Suite 2
_____
Address
Washington, DC 20015

202-223-7900
_____
Telephone

_Clerk of the Court_

By _____
                                    Deputy Clerk

Date   **10/28/2015**

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요      የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ።

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### 500 Indiana Avenue, N.W., Suite 5000
### Washington, D.C. 20001 Teléfono: (202) 879-1133

1723 Wisconsin Avenue LLC, et al.

_____
                                    Demandante

contra

Ana Marinovic, Successor Trustee                          Número de Caso: _____

_____
                                    Demandado

## CITATORIO

Al susodicho Demandado:

    Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

    A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Russell S. Drazin                                          *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

4400 Jenifer Street, nW, Suite 2                Por: _____
_____
Dirección                                                        Subsecretario
Washington, DC  20015

202-223-7900                                    Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

    IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

    Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc

**Filed**
**D.C. Superior Court**
**10/28/2015 12:02PM**
**Clerk of the Court**

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
(Civil Division)

| | |
|---|---|
| **1723 WISCONSIN AVENUE LLC,**<br>a District of Columbia limited liability company<br>c/o Russell S. Drazin, Esquire<br>Pardo & Drazin, LLC<br>4400 Jenifer Street, NW, Suite 2<br>Washington, DC  20015<br><br>and<br><br>**1728 WISCONSIN AVENUE LLC,**<br>a District of Columbia limited liability company<br>c/o Russell S. Drazin, Esquire<br>Pardo & Drazin, LLC<br>4400 Jenifer Street, NW, Suite 2<br>Washington, DC  20015<br><br>     Plaintiffs,<br><br> v.<br><br>**ANA MARINOVIC**, Successor Trustee<br>under The Bepina Sabalic Kunin Charitable<br>Remainder Unitrust dated May 12, 2014<br>c/o Michael S. Nadel, Esquire<br>McDermott Will & Emery LLP<br>500 N. Capitol Street, NW<br>Washington, DC  20001,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>2015 CA 008296 B<br><br>Case No. _____ (RP)<br>ACTION INVOLVING REAL PROPERTY<br><br>Property Addresses:<br>1723 Wisconsin Avenue, NW<br>Washington, DC  20007<br>(Lot 0835 in Square 2154)<br><br>1728 Wisconsin Avenue, NW<br>Washington, DC  20007<br>(Lot 0289 in Square 1298) |

## COMPLAINT

### (Specific Performance; Breach of Contract)

Plaintiffs 1723 Wisconsin Avenue LLC and 1728 Wisconsin Avenue LLC

(collectively, "Purchasers"), by and through their undersigned counsel, hereby

respectfully move this Court for judgment in their favor and against Defendant Ana

Marinovic, Successor Trustee under The Bepina Sabalic Kunin Charitable Remainder Unitrust dated May 12, 2014 ("Seller") on the grounds as hereinafter set forth:

## PARTIES

1.    Purchasers are District of Columbia limited liability companies.

2.    Upon information and belief, Seller is an adult resident of the State of Maryland.

## JURISDICTION

3.    This Court has jurisdiction over these parties and these matters pursuant to D.C. Code §§ 11-921 and 13-423.

## FACTUAL BACKGROUND

4.    Seller (through a predecessor trustee) is the record owner of those certain improved real properties in the District of Columbia identified for assessment and taxation purposes as Lot 0835 in Square 2154 and Lot 0289 in Square 1298 (collectively, "Properties").  The Properties includes commercial buildings, and have street addresses of 1723 Wisconsin Avenue, NW, Washington, DC 20007 and 1728 Wisconsin Avenue, NW, Washington, DC 20007, respectively.  The Properties are described among the Land Records of the District of Columbia as follows:

<u>1723 Wisconsin Avenue, NW:</u>

**All of Lot 31 in Aileen M. Callaghan's subdivision of Lot 24 in Square 2154, as per plat recorded in Liber No. 89, Folio 108 of the Records of the Office of the Surveyor of the District of Columbia, excepting the Westerly 10 feet by the full width thereof condemned and taken for the widening of Wisconsin Avenue by proceedings in the District Court Case No. 2638**

2

**in the United States District Court for the District of Columbia.**

1728 Wisconsin Avenue, NW:

**Lot numbered 289 in the subdivision made by Susan B. Olio in Square numbered 1298, as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber Georgetown 2 at folio 43.**

5.      Purchasers entered into a written contract ("Contract") dated August 17, 2015 to purchase the Properties from Seller (through predecessor trustees).  A copy of the Contract is attached hereto and made a part hereof as Exhibit "A".

6.      Pursuant to the Contract, Purchasers and Seller agreed to settle under the Contract on or before October 28, 2015.  Moreover, time is of the essence with respect to the parties' contractual obligation to settle under the Contract on or before October 28, 2015.

7.      Despite her contractual obligation to do so and without excuse of any kind, Seller, through her attorney, has communicated to Purchasers her unconditional and unequivocal refusal to settle under the Contract.  Upon information and belief, Seller has been induced to anticipatorily breach the Contract by Bepina Sabalic Kunin, the donor under The Bepina Sabalic Kunin Charitable Remainder Unitrust dated May 12, 2014.  Purchasers reserve the right to amend this Complaint to include claims against that non-party for money damages.

8.      At all times relevant hereto, Purchasers were ready, willing, and able to settle under the Contract.

3

9.      Seller has anticipatorily breached the Contract by communicating to Purchasers her unconditional and unequivocal refusal to settle under the Contract.

10.     Purchasers have no adequate remedy at law.

## COUNT I
### (Specific Performance; Breach of Contract)

11.     Purchasers reallege and incorporate Paragraphs 1- 10, inclusive, as if set forth fully herein.

12.     Pursuant to the Contract, Purchasers are contractually entitled to purchase the Properties from Seller.

13.     Seller has anticipatorily breached the Contract by communicating to Purchasers her unconditional and unequivocal refusal to settle under the Contract.

14.     As a direct and proximate result of that anticipatory breach, pursuant to the Contract, Purchasers are entitled to specific enforcement of the Contract, title to and possession of the Properties, and their attorneys' fees and costs incurred in enforcing the Contract.

## PRAYER FOR RELIEF

**WHEREFORE**, Purchasers respectfully pray that this Court:

a.      Specifically enforce the Contract, and order Seller to transfer title to and possession of the Properties to Purchasers and to otherwise fully-honor the Contract;

b.      Award Purchasers their attorneys' fees and costs incurred in enforcing the Contract (which award of money damages shall be a credit against the sales price to be paid by Purchasers to Seller for the Properties); and

c.      Award such other and further relief as this Court deems proper and just.

4

Respectfully submitted,

PARDO & DRAZIN, LLC

By: _____
Russell S. Drazin (#470091)
rdrazin@pardodrazin.com
Jason A. Pardo (#452393)
jpardo@pardodrazin.com
4400 Jenifer Street, NW, Suite 2
Washington, DC  20015
202-223-7900 (phone)
202-223-7901 (fax)

Counsel for Plaintiffs

# EXHIBIT A

## AGREEMENT OF PURCHASE AND SALE

THIS AGREEMENT OF PURCHASE AND SALE (hereinafter referred to as this "Agreement") is made this 17th day of August, 2015, (the "Effective Date") by and between Bepina Kunin Charitable Remainder Trust (hereinafter referred to as "Seller"), and 1723 Wisconsin Avenue LLC and 1728 Wisconsin Avenue LLC, and/or their assignee (hereinafter referred to as "Purchaser").

## W I T N E S S E T H :

WHEREAS, Seller is the owner of certain real properties located in Washington, DC, commonly known as 1723 Wisconsin Avenue, NW and 1728 Wisconsin Avenue, NW, and as more particularly identified and described on **Exhibit A**, attached hereto and made a part hereof (the "Land"), together with all easements, rights, privileges, rights-of-way, hereditaments, tenements and appurtenances belonging to the Land, all right, title and interest in and to all open or proposed highways, streets, roads, avenues, alleys, easements, strips, gores and rights of way, in, on, across, in front of, contiguous to, abutting or adjoining the Land, and together with all improvements and fixtures situate thereon (collectively with the Land, the "Real Property"); and

WHEREAS, Purchaser desires to purchase from Seller, and Seller desires to sell to Purchaser, the Property, in accordance with the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises of the parties hereto made one to another, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.  Agreement of Purchase and Sale.  Seller hereby agrees to sell and convey the Property to Purchaser, and Purchaser hereby agrees to purchase the Property from Seller, in accordance with the terms and provisions hereof.

2.  Title.  Title to the Real Property shall be good and marketable, of record and in fact, free and clear of all occupancy agreements, liens, encumbrances and encroachments, and subject only to the operation and effect of the Permitted Exceptions (as hereafter defined). "Permitted Exceptions" shall be deemed to mean all matters reflected or disclosed on a current and accurate survey of the Real Property, and all instruments and matters of record among the Land Records of Washington, DC, and reflected on the commitment for title insurance (the "Title Commitment") from a title insurer selected by Purchaser (the "Title Company") covering the Real Property, to which Purchaser has not objected pursuant to the terms hereof. Purchaser's objections shall be set forth in a written notice to Seller given within the Study Period (as herein defined) (for purposes of this Section 2, the "Title Period"). Notwithstanding anything to the contrary contained in this Agreement, Purchaser hereby specifically disapproves of any right or claim of occupancy of all or any part of the Property, and all liens evidencing monetary encumbrances (other than liens for non-delinquent real property taxes) and Seller agrees to cause all such liens to be eliminated at Seller's sole cost and expense prior to or concurrently with the Settlement. If there are monetary encumbrances found to exist other than those known by Seller, Purchaser shall notify Seller of such monetary encumbrances within the Title Period and Seller shall within ten (10) days from receiving notice elect, by written notice to Purchaser, to cure or

not to cure such encumbrances. If Seller elects not to cure the monetary encumbrances in accordance with the preceding sentence, then Purchaser, within seven (7) days from receipt of Seller's written notice of such election (or the lapse of the notice period, as applicable), shall elect by written notice to Seller to either (1) waive the monetary encumbrance and proceed with Settlement, or (2) terminate this Agreement, in which event this Agreement shall terminate, the Deposit (or so much thereof as has been posted as of such time) shall be returned to Purchaser, and neither party shall have any further right or claim hereunder, except for such obligations, rights or claims that expressly survive the termination of this Agreement.

Title to the Real Property shall be deemed good and marketable if the Title Company agrees to insure fee simple title to the Real Property and issue to Purchaser, at standard premium rates, an extended coverage form owner's title insurance policy, subject only to the Permitted Exceptions, in such form and with such endorsements as may be required by Purchaser in its reasonable discretion. If there are title defects other than the Permitted Exceptions, Purchaser shall notify Seller of such title defects within the Title Period and Seller shall within ten (10) days from receiving notice elect, by written notice to Purchaser, to cure or not to cure such defect. If Seller elects not to cure the title defect in accordance with the preceding sentence, then Purchaser, within seven (7) days from receipt of Seller's written notice of such election (or the lapse of the notice period, as applicable), shall elect by written notice to Seller to either (1) waive the title defect and proceed with Settlement, or (2) terminate this Agreement, in which event this Agreement shall terminate, the Deposit (or so much thereof as has been posted as of such time) shall be returned to Purchaser, and neither party shall have any further right or claim hereunder, except for such obligations, rights or claims that expressly survive the termination of this Agreement.

Upon such termination, Purchaser shall return to Seller all documentation delivered to it by Seller. Seller covenants and agrees that during the term of this Agreement, it will not take or fail to take any action, the result of which would cause title to the Real Property to materially differ from the approved condition of the title described in this Section 2 ("Approved Condition of Title").

3.    Purchase Price. The collective purchase price ("Purchase Price") for the Property is Two Million Dollars ($2,000,000.00). The purchase price for 1723 Wisconsin Avenue, NW shall be One Million Fifty Thousand Dollars ($1,050,000.00) and the purchase price for 1728 Wisconsin Avenue shall be Nine Hundred Fifty Thousand Dollars ($950,000.00).

One Million Seven Hundred Thousand Dollars ($1,700,000.00) and is to be paid by certified, cashier's or title insurance company check or federal wire transfer of funds at Settlement. At Settlement (hereinafter defined), the Escrow Agent (as defined below) shall deliver the Deposit (as defined below) to Seller, and Purchaser shall pay to Seller the balance of the Purchase Price less the Deposit, by certified, cashier's or title insurance company check or by confirmed receipt of inter-bank wire transfer of federal funds. The remaining Three Hundred Thousand Dollars ($300,000.00) would be held by Seller in the form of a Second Deed of Trust that would pay 8% interest, and would be due and payable to Seller one year after closing in the form of a lump sum payment of Three Hundred Twenty Four Thousand Dollars ($324,000.00).

4.    Deposit.

(a)    Within (2) days of the final execution and delivery of this Agreement, Purchaser shall deliver to Passport Title Services, LLC; 2275 Research Boulevard, Suite 500,

2



Rockville, MD   20850 (the "Escrow Agent")a deposit of Seventy-Five Thousand Dollars ($75,000.00) (the "Initial Deposit") by certified or cashier's check to the order of Escrow Agent, to be held by Escrow Agent, in escrow, by a federally insured interest-bearing account at a financial institution designated by Seller (the "Escrow Account").   As used herein, the term "Deposit" shall include any accrued interest in the Escrow Account.  Upon the expiration of the Study Period, provided Purchaser has not timely terminated this Agreement pursuant to Section 14 hereof, all Deposits shall be non-refundable, except as specifically set forth herein to the contrary.

(b)     The Deposit and interest shall be credited by Seller in favor of Purchaser as part of the Purchase Price.

(c)     If this escrow shall be involved in any litigation or controversy, the parties hereto shall severally hold the Escrow Agent free and harmless against any cost or expense that may be suffered by it by reason of such litigation or controversy, other than due to its negligence or malfeasance. All such costs and expenses shall be paid by the party who does not prevail in such litigation. In addition, the party who prevails shall be indemnified against any cost or expense, including reasonable attorneys' fees (both at trial and on appeal), and replacement of any depletion in the escrow funds, if such funds are ultimately to be paid to the prevailing party. This provision shall survive any termination of this Agreement.

(d)     In the event conflicting demands are made, or notices served upon the Escrow Agent with respect to this escrow, the Escrow Agent shall have, without limitation, the following rights and obligations:

(i)     Withhold and stop all further proceedings in, and performance of this escrow for a reasonable period of time to permit resolution; or

(ii)     File a suit in interpleader and obtain an order from a court of competent jurisdiction requiring the parties to interplead and litigate in such court their several claims and rights amongst themselves. In the event such interpleader suit is brought, and the escrow funds paid and/or delivered into court, the Escrow Agent shall <u>ipso facto</u> be fully released and discharged from all obligations to perform any and all duties or obligations relative to such funds which are imposed upon it by this Agreement.

(e)     The Escrow Agent, in its capacity as escrow agent, is not to be held liable for the sufficiency or correctness of the form, manner of execution or validity of any instrument that might be deposited into the escrow, nor as to the identity, authority or rights of any person executing the same, nor the failure of any other party to comply with any provisions of any agreement, contrast or other instrument filed herein, and its duties hereunder shall be limited to the safekeeping of the money, instruments, or other documents received by it, and for the disposition of the same in accordance with the provisions of this Agreement, and for the discharge of its obligations specified in this Section.

(f)     Prior to the earlier of the Settlement or the termination of this Agreement in accordance with its terms, neither party shall have the right to withdraw any instruments or monies deposited by them with the Escrow Agent, except as herein specifically provided.

5.     <u>Settlement.</u>  Settlement shall take place no later than sixty days (60) days following the expiration of the Study Period (as defined herein) and the full execution of this



3

Agreement, on a date and time reasonably selected by Purchaser with 10 days prior notice to Seller, unless such other date is mutually agreed upon by the parties in writing (the exact date on which settlement occurs hereunder being referred to as the "Settlement Date").  Settlement shall occur at a location and time mutually acceptable to Purchaser and Seller (the "Settlement").

      6.    <u>Settlement Deliveries</u>.

      (a)    At Settlement, Seller shall:

      (i)    Deliver to the Title Company a good and sufficient special warranty deed conveying the Real Property in fee simple to Purchaser in accordance with the terms hereof, vacant, and subject to no liens or encumbrances other than the Permitted Exceptions;

      (ii)    Execute and deliver to Purchaser and the Title Company an affidavit of Seller certifying that Seller is not a "foreign person" as defined in the Federal Foreign Investment in Real Property Tax Act of 1990, as amended;

      (iii)    Execute and deliver to Purchaser a General Assignment in a form to be agreed upon by Purchaser and Seller, assigning the Intangible Property to Purchaser, as well as a Bill of Sale conveying the Personal Property in accordance with the terms and conditions hereof, to the extent the same is owned and assignable by Seller;

      (iv)    Give full and complete possession of the Property to Purchaser, not subject to the right of possession by any person or entity other than pursuant to a Permitted Exception;

      (v)    Deliver to Purchaser all plans and specifications in Seller's possession or control;

      (vi)    Deliver to Purchaser the originals, or the best copies available to Seller, of all licenses and permits in respect of the Property, if any, to the extent in Seller's possession or control;

      (vii)    Deliver to Purchaser a reaffirmation, as of the Settlement Date, of Seller's representations made hereunder; and

      (viii)    Execute and deliver such other documents as may be necessary or desirable to consummate the transaction contemplated hereby, including, but not limited to, mechanic's lien affidavits, residency affidavits or withholding certificates, and an extended coverage owner's affidavit customarily required by the Title Company, in form and substance reasonably approved by Seller.

      (b)    At Settlement, Purchaser shall:

      (i)    Deliver, or cause to be delivered, to Seller the Purchase Price; and

      (ii)    Provide a good standing certificate and evidence of authority of Purchaser to consummate the transaction contemplated hereby and due authorization and execution of the documents required from Purchaser at Settlement.

(c)   Upon Settlement, Seller and Purchaser shall each instruct the Escrow Agent (or the Title Company, as applicable) to promptly undertake all of the following:

(i)   Prorations.  Prorate all matters referenced in Section 7 based upon the settlement statement delivered and signed by the parties;

(ii)   Recording.  Cause the Special Warranty Deed and any other documents which the parties hereto may mutually direct, to be recorded in the Land Records of the District of Columbia, in the order directed by the parties:

(iii)   Funds.  Disburse from funds deposited by Purchaser with Escrow Agent toward payment of the Purchase Price to Seller and to all items chargeable to the account of Purchaser pursuant hereto in payment of such costs and disburse the balance of such funds, if any, to Purchaser; and

(iv)   Title Policy.  Direct the Title Company to issue the title policy to Purchaser in the form as required by this Agreement.

7.   Adjustments.

(a)   All items of income and expense relating to the Real Property, including, without limitation, real estate taxes, all utilities, water and sewer rents, annual front-foot benefit charges applicable to the Real Property, other operating charges, and any other matters customarily adjusted at settlement are to be adjusted between the parties as of the Settlement Date.   Any service contracts or maintenance agreements affecting the Real Property shall be terminated by Seller as of the Settlement Date, Purchaser shall have no obligation therefor, and no adjustment of any cost thereunder shall be made at Settlement.

(b)   Following Settlement, Purchaser shall have the right to pursue a reduction or refund in the real estate tax assessment for the Real Property from the appropriate governmental authority for any tax period prior to and after the Settlement.  If Purchaser pursues a tax appeal and obtains an adjustment or reduction in the real estate tax assessment for the Real Property after Settlement, Seller shall not be entitled to receive payment of its proportionate share of any refund or adjustment, all such rights to be transferred to Purchaser under and pursuant to the General Assignment.

8.   Costs.  Purchaser and Seller shall be equally responsible for payment of all transfer and recordation taxes.  Each party shall be responsible for its own attorneys' and other consultants' fees and expenses.  Purchaser shall be responsible for any and all other expenses (limited only to the purchaser's expenses) including purchaser's costs of closing, examination of title, title insurance, and  settlement company fees and the like.  Seller shall pay the costs of preparing the deed, and the costs of curing any existing liens or encumbrances.

9.   Seller's Deliveries.  Within five (5) business days following the execution and delivery hereof by all parties hereto, Seller shall deliver to Purchaser the following, to the extent the same are currently in the possession of Seller:

(a)   Tax Statements.  Copies of all bills issued for the most recent real property taxes and personal property taxes payable with respect to the Real Property, or any portion



thereof, and copies of all notices or other documents relating to any such assessments;

(b)    <u>Licenses, Plans and Permits.</u>  Copies of all licenses and permits, including all licenses, permits, use and occupancy permits, rent invoices, approvals, dedications and the like, relating or incident to the Property, as well as copies of all plans and specifications, architectural and civil engineering drawings, surveys, site plans and similar documents, all to the extent the same are within the possession or control of Seller or its agents;

(c)    <u>Environmental Reports.</u>  Copies of any environmental, soils and similar reports, tests and studies prepared by, for or at the direction of Seller, or otherwise in Seller's possession or control; and

(d)    <u>Other Documents.</u>  Copies of land leases, title reports, utility bills, permits, zoning documentation, parcel covenants, space leases, use and occupancy permits and operating statements, all to the extent the same are within the possession or control of Seller or its agents.

10.    <u>Inspection.</u>  Purchaser, its agents, consultants, contractors and subcontractors shall have the right from time to time, upon reasonable advance notice to Seller to enter upon the Real Property during the Study Period for the purpose of making any inspection, investigations, studies or tests which are deemed necessary or appropriate by Purchaser, including, but not limited to, environmental, soils and related tests, all in accordance with Section 10 hereof.  In connection with such entry onto the Real Property, Purchaser agrees that it shall be responsible for any damages to the same resulting from the exercise of Purchaser's rights under or pursuant to this paragraph, and shall indemnify and hold Seller harmless from all claims of any type (including reasonable and actual attorneys' fees incurred in connection therewith) arising solely out of Purchaser's or Purchaser's agents, consultants, contractors and subcontractors entry onto the Real Property for the purpose set forth herein.  The foregoing indemnification shall survive consummation of Settlement hereunder, or any other termination of this Agreement.

11.    <u>Conditions Precedent to Purchaser's Obligations.</u>  The Seller's and Purchaser's obligations with respect to the transaction contemplated by this Agreement are subject to the satisfaction, not later than the Settlement (unless otherwise provided), of the following conditions, and the obligations of the parties with respect to such conditions are as follows:

(a)    <u>Conditions.</u>  At and as of Settlement, there shall be no site plan conditions created by or at the direction of Seller and affecting the Real Property which did not exist as of the date hereof;

(b)    <u>Moratorium.</u>  Between the date hereof and the Settlement Date, there shall be no reassessment, reclassification, rezoning or change in other statute, law, judicial or administrative decision, ordinance or regulation (including amendments and modifications of any of the foregoing) by any governmental authorities or any public or private utility having jurisdiction over the Real Property which would materially affect, in Purchaser's reasonable judgment, the acquisition, sale, or use of the Real Property;

(c)    <u>Reaffirmation of Representations, Warranties and Covenants of Seller.</u>  Seller shall have duly performed each and every agreement to be performed by Seller hereunder and Seller shall reaffirm that their representations warranties and covenants, as set forth in this Agreement, are materially true and correct as of the Settlement;

(d)     <u>Seller's Deliveries</u>.  Seller shall have delivered all of the items required to be delivered by Seller under the terms at this Agreement;

(e)     <u>Status of Title</u>.  Title to the Real Property shall not differ from the Approved Condition of Title; and

(f)     <u>Material Change</u>.  Between the date hereof and the Settlement Date, there shall have been no material change in the condition of the Property resulting from the action or inaction or otherwise at the direction of Seller.

In the event any of the conditions set forth in this Section 11 are not timely satisfied, deemed approved or waived, for a reason other than the default of Purchaser or Seller under this Agreement:

(i)     This Agreement and the rights and obligations of Purchaser and Seller shall terminate, except as otherwise provided herein; provided, however, no such termination shall occur until Purchaser has had the opportunity to waive any condition for Purchaser's benefit within five (5) business days after receipt of written notice from Seller; and

(ii)     Escrow Agent shall deliver any part of the Deposit held by Escrow Agent to Purchaser, and Seller shall promptly deliver to Purchaser any part of the Deposit previously released by Escrow Agent to Seller; and

(iii)     Seller shall reimburse Purchaser for costs, fees and expenses it has incurred pursuant to and subsequent to the date of ratification of this Agreement, including but not limited to engineering, title, appraisal and legal.

12.     <u>Seller's Covenants</u>.   Seller covenants as follows, to and for the benefit of Purchaser, that until Settlement:

(a)     Seller will (i) continue the operation (if applicable) of the Real Property in the manner of which it is currently operated, (ii) not commit or knowingly permit to be committed any waste to the Real Property, (iii) not enter into any lease or service contract without the prior written consent of Purchaser, (iv) not enter into any agreement or instrument or take or fail to take any action which would constitute an encumbrance on the Property and which would bind Purchaser or the Property after Settlement, without the prior written consent of Purchaser, and (v) continue the insurance currently carried by Seller, or such replacements thereof, on the Real Property, in amounts and in such form as Seller may determine using commercially reasonable judgment; and

(b)     Seller shall not undertake to modify the zoning classification of the Real Property.

(c)     Seller shall use good faith commercially responsible efforts to (i) operate and manage the Real Property in the manner in which it is currently operated, (ii) maintain all present services and amenities, and (iii) maintain the Real Property in its current condition and repair, normal wear and tear excepted.

(d)     Upon Seller's receipt of actual knowledge thereof, Seller shall promptly



notify Purchaser of any material change in any condition with respect to the Property or of any event or circumstance which makes any representation or warranty of Seller to Purchaser under this Agreement materially untrue and of any covenant of Seller under this Agreement which Seller will be incapable of performing.

13.    Seller's Representations and Warranties.

13.1   The Seller represents and warrants to the Purchaser that the following facts and matters are true, accurate and complete as of the Effective Date:

(a)     Seller is the fee simple owner of the Real Property.

(b)     Seller has not received any notice of any violation of any zoning, building, fire or other regulatory law, statute or ordinance relating to the Property.

(c)     Seller has not received any notice of any litigation or including governmental proceedings pending or threatened against Seller which would materially and adversely affect the Property or any portion thereof, or its continued operation.   The Seller will give the Purchaser prompt written notice of any such litigation arising subsequent to the date hereof and prior to Settlement to the extent Seller acquires knowledge thereof.

(d)     The Seller has the right, power, capacity and authority to enter into this Agreement and to sell the Property in accordance with the terms and conditions of hereof.   The Seller has duly and validly authorized, executed and delivered this Agreement.

(e)     Seller has not received any notice that the Property is subject to any proposed or pending special assessments.

(f)     Seller is the owner of the Personal Property.

(g)     The Seller has in full force insurance policies adequately covering the Property, including for loss or damage by fire or other casualty.

(h)     Seller has not received notice of nor does it have any actual knowledge of any actual or threatened condemnation proceeding or special assessment with regard to the Property.

(i)     To Seller's actual knowledge, no treatment has been undertaken during Seller's period of ownership of the Property with respect to termite or similar infestation on the Real Property other than normal periodic service and, to Seller's actual knowledge, without independent investigation, there is no substantive damage to any portion of the Real Property from termite or similar infestation.

(j)     Under penalty of law, Seller is not a "foreign person" as contemplated by Section 1445 of the Internal Revenue Code, as amended.



(k)     To Seller's knowledge, without independent investigation, there are no pending actions against Seller under any environmental law, regulation or ordinance. Seller has not received written notice, and does not otherwise have any actual knowledge, of such an action, or of a possible action.

(l)     There are no materially adverse facts or matters affecting or threatening to affect the Property or its financial condition which have not been disclosed to Purchaser in writing.

(m)     To the best of Seller's knowledge, there are no pending actions against Seller under any environmental law, regulation or ordinance. Seller has not received notice in any form, and does not otherwise have any knowledge, of such an action, or of a possible action.

(n)

13.2    It shall be a condition for Settlement that each of the foregoing representations and warranties be materially true, accurate and complete at Settlement. The Seller shall immediately notify the Purchaser, in writing, of any event or condition known to Seller which occurs prior to Settlement which causes a change in the facts relating to, or the truth of, any of the above representations or warranties.

13.3    Purchaser acknowledges and agrees that, except as set forth in this Agreement, Purchaser shall accept the Property in **"AS IS, WHERE IS CONDITION, WITH ALL FAULTS."** Purchaser hereby acknowledges that, except for the representations and warranties and Seller's Deliveries by Seller set forth in this Agreement, Purchaser shall not be entitled to, and does not and will not, rely on Seller or its agents as to (i) the quality, nature, adequacy or physical condition of the Property including, but not limited to, the structural elements, foundation, roof, appurtenances, access, landscaping, parking facilities or the electrical, mechanical, HVAC, plumbing, sewage or utility systems, facilities or appliances at the Property, if any; (ii) the quality, nature, adequacy or physical condition of soils or ground water at the Property, (iii) the existence, quality, nature, adequacy or physical condition of the utilities serving the Property; (iv) the development potential of the Property or the use of the Property for any particular purpose; (v) the zoning or other legal status of the Property; (vi) the Property or its respective operations' compliance with any applicable codes, laws, regulations, statutes, ordinances, covenants, conditions or restrictions of any governmental or quasi-governmental entity or of any other person or entity; (vii) the condition of title to the Property or the nature, status and extent of any right, encumbrance, license, reservations, covenant, condition, restriction or any other matter affecting title to the Property; (viii) the presence of any underground or aboveground tanks, pits, sumps, drums or other containers; or (xi) the existence or nature of any environmental condition(s) at the Property involving any and all hazardous or toxic materials, substances, pollutants, contaminants or waste currently defined as a "hazardous waste", "hazardous substance", "toxic substance", "waste", "pollutant", "contaminant" or any word of similar import under any Environmental Laws, including, without limitation, oil, petroleum, or any petroleum derived substance or waste, microbial matter, asbestos or asbestos-containing materials, PCBs, explosives, radioactive materials, dioxins, or urea formaldehyde insulation (collectively, "Hazardous Substances"). As used herein, "Environmental Laws" shall include,

9



without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. § 9601, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, et seq., the Clean Air Act, 42 U.S.C. § 7401, et seq., the Clean Water Act, 33 U.S.C. § 1251, et seq., the Toxic Substance Control Act, 15 U.S.C. § 2601, et seq., and the Occupational Safety and Health Act, 29 U.S.C. § 651, et seq., as any of the preceding have been amended prior to the date hereof, and any other federal, state, or local law, ordinance, regulation, rule, order, decision or permit relating to the protection of the environment or of human health from environmental effects of Hazardous Substances and which are applicable to the Property.

**PURCHASER ACKNOWLEDGES THAT PURCHASER HAS RELIED AND WILL BE RELYING ON ITS OWN DUE DILIGENCE REVIEW IN PURCHASING THE PROPERTY, INCLUDING PHYSICAL INSPECTIONS OF THE PROPERTY, AND THAT THE SAME IS BEING PURCHASED IN RELIANCE UPON SUCH DUE DILIGENCE REVIEW, AND FURTHER ACKNOWLEDGES THAT EXCEPT AS SET FORTH HEREIN, NO REPRESENTATIONS OR WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PURPOSE, HAVE BEEN MADE OR WILL BE MADE BY OR ON BEHALF OF SELLER WITH RESPECT TO THE PROPERTY OR THE PHYSICAL CONDITION THEREOF.**

14.     Study Period.  Purchaser shall have fifteen (15) days from the date of execution of this Agreement (the "Study Period") to make such appraisals, investigations, studies and tests with respect to the Property as Purchaser deems necessary or appropriate to determine the feasibility of purchasing the Property.

If, during the Study Period, Purchaser determines, in its sole discretion, that the Property is not acceptable to Purchaser or the purchase thereof is not feasible then Purchaser may, at any time prior to 5:00 p.m. Eastern Standard time on the final day of the Study Period, terminate this Agreement by written notice to Seller.

Upon any timely termination of this Agreement pursuant to this Paragraph 14, the Deposit shall be promptly returned to Purchaser.  The escrow agent is specifically authorized and instructed to release the deposit to the Purchaser without any additional authorizations. In the event of termination as aforesaid, neither party shall thereafter have any further rights or obligations hereunder, except for the rights and obligations that expressly survive the termination of this Agreement.

15.     Seller's Rights between full execution of this Agreement and Settlement.  Seller shall have the right to continue to market the property and/or accept back-up offers for 1723 Wisconsin Avenue, NW and 1728 Wisconsin Avenue, NW until Settlement.   Seller agrees to notify Purchaser if Seller fully executes a back-up offer.

16.     Condemnation.   In the event Seller receives notice of any condemnation proceedings or notice of the intention of any governmental or quasi-governmental authority to initiate condemnation proceedings, or if any such proceedings commence, or an actual condemnation or taking of the Real Property of any portion thereof occurs, Seller will promptly notify Purchaser and Purchaser may, within thirty (30) days thereafter (a) elect to terminate this



Agreement, in which event, the Deposit shall be returned to Purchaser and the parties shall be relieved of all further liability hereunder except as specifically set forth elsewhere in this Agreement; or (b) if Purchaser does not elect to terminate this Agreement the parties shall proceed to Settlement without abatement of the Purchase Price and Seller shall not make a settlement of any such claims and shall assign to Purchaser all its rights in and to any condemnation award, proceeds or claims.

17.    Damage to Property Prior to Settlement. The risk of any loss of or damage to the Property shall remain with the Seller and pass to Purchaser simultaneously with the Seller's delivery of a deed to the Real Property to the Purchaser or Purchaser's agent at Settlement. In the event that the Property or any portion thereof is damaged or destroyed prior to Settlement by fire or other casualty, Seller will promptly notify Purchaser and Purchaser may, within thirty (30) days thereafter (a) elect to terminate this Agreement, in which event, the Deposit shall be returned to Purchaser and the parties shall be relieved of all further liability hereunder except as specifically set forth elsewhere in this Agreement; or (b) if Purchaser does not elect to terminate this Agreement the parties shall proceed to Settlement, without abatement of the Purchase Price and Seller shall not make a settlement of any such claims and shall assign to Purchaser all its rights in and to such claims and insurance proceeds due as a result of such damage.

18.    Default. If Purchaser shall fail or refuse to make Settlement hereunder for any reason other than a termination of this Agreement by either party as provided herein or a default by Seller under the terms of this Agreement, the Seller shall have the right to terminate this Agreement and the Deposit provided in Section 4 above shall be forfeited and the same shall forthwith be delivered by the Escrow Agent to Seller as agreed-upon liquidated damages, not as a penalty and as Seller's sole remedy; provided however any indemnification or other obligation of Purchaser that survives either the termination of or the closing under this Agreement shall remain an obligation of the Purchaser. In the event of any action brought by Seller against Purchaser, Seller shall, provided it is the prevailing party in such action, be entitled to recover from Purchaser its costs and expenses incurred in such action, including reasonable attorneys' fees and court costs.

If Seller shall fail or refuse to make Settlement hereunder for any reason other than a termination of this Agreement by either party as provided herein or a default by Purchaser under the terms of this Agreement, the Purchaser shall have as its sole remedies (i) the right to specific performance and reimbursement of any out of pocket costs and expenses incurred by Purchasers with respect to this transaction; or (ii) the right to terminate this Agreement and receive a refund of its Deposit. In the event and only in the event, specific performance is not available, then Purchaser may seek damages against Seller in an amount not to exceed the Deposit. In the event of any action brought by Purchaser against Seller, Purchaser shall, provided it is the prevailing party in such action, be entitled to recover from Seller its costs and expenses incurred in such action, including reasonable attorneys' fees and court costs.

No delay or omission in the exercise of any right or remedy accruing to Seller upon any breach by Purchaser under this Agreement shall impair such right or remedy, or be construed as a waiver of any breach theretofore or thereafter occurring. The waiver by Purchaser or Seller of any condition shall not constitute a waiver by Purchaser or Seller (as the case may be) of any subsequent breach of the same or any other term, covenant, or condition herein contained.



19. <u>Broker</u>. Each party, by the execution hereof, represents and warrants that neither party has engaged the services of any broker, finder, agent or other similar person or entity in connection with this transaction other than O'Neill Realty Advisors, LLC, on behalf of Seller, and TSC Realty Services, LLC, on behalf of Purchaser (hereinafter collectively referred to as the "Brokers"). Seller agrees to pay O'Neill Realty Advisors, LLC a fee pursuant to a separate agreement and Seller agrees to pay Montview TSC Realty Advisors, LLC a fee equal to two percent (2%) of the Purchase Price payable at Settlement. Each party warrants to the other that it has not worked with any other broker. Each party shall indemnify and hold harmless the other against and from any loss, cost, damage or fee (including attorneys' fees) resulting from any inaccuracy of such representation and warranty. The provisions of this Section 19 shall survive Settlement or other termination of this Agreement.

20. <u>Definition of "business day"</u>. For purposes of this Agreement, the term "business day" as used herein shall mean all days of the week except for Saturday, Sunday and any other days which are declared Federal bank holidays in the District of Columbia. If any period of time ends, or if any act is required to be performed, on a day other than a business day, then the applicable period of time shall be deemed to expire, or the date required for the performance of the appropriate obligation shall be deemed to be extended, on the next business day following the applicable date of performance.

21. <u>FIRPTA</u>. The Foreign Investment in Real Property Tax Act (FIRPTA), IRC Section 1445, requires that every purchaser of U.S. real property must, unless an exemption applies, deduct and withhold from Seller's proceeds ten percent (10%) of the gross sales price. The primary exemptions which might be applicable are: (a) Seller provides Purchaser with an affidavit, under penalty of perjury, that Seller is not a "foreign person"" as defined in FIRPTA, or (b) Seller provides Purchaser with a "qualifying statement," as defined in FIRPTA, issued by the Internal Revenue Service. Seller and Purchaser agree to execute and deliver as appropriate, any instrument, affidavit and statement, and to perform any acts reasonably necessary to carry out the provisions of FIRPTA and regulations promulgated thereunder.

22. <u>Miscellaneous</u>.

(a) <u>Notices</u>. Any and all, notices, requests or other communications hereunder shall be deemed to have been duly given on the day of actual delivery thereof (as evidenced by receipt therefore) if in writing and if transmitted by hand delivery with receipt therefor, by recognized overnight courier, or by registered or certified mail, return receipt requested (or, as to a notice pursuant to Section 2 or Section 14 hereof, via facsimile transmission with a confirmation by the sending machine of receipt by the receiving machine) addressed as follows (or to such new address as the addressee of such a communication may have notified the sender thereof):

To Seller:



To Purchaser:
1723 and 1728 Wisconsin Ave LLC
Hashim Hassan
4812 Ellicott Street, NW
Washington, DC  20016

To Escrow Agent:
Passport Title Services, LLC
2275 Research Boulevard
Suite 500
Rockville, MD  20850

(b)     Governing Law.   This Agreement shall be construed and enforced in accordance with the laws of the District of Columbia, without regard to choice of laws principles.

(c)     Headings.   The captions and headings herein are for convenience and reference only and in no way define or limit the scope or content of this Agreement or in any way affect its provisions.

(d)     Effective Date.   This Agreement shall be effective as of the date set forth in the introductory paragraph of this Agreement.

(e)     Counterpart Copies.   This Agreement may be executed in two or more counterpart copies, all of which counterparts shall have the same force and effect as if all parties hereto had executed a single copy of this Agreement.

(f)     Binding Effect; Assignment.   This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns; provided, however, that Purchaser shall not be entitled to assign this Agreement without the prior written consent of Seller, which consent shall be given or withheld at Seller's sole discretion; and provided, further, that Seller's consent shall not be required for an assignment of this Agreement to an entity: (i) which is controlled by or is in common control with or affiliated with Purchaser, (ii) in which Purchaser is a partner, shareholder or member, or (iii) with which Purchaser has a contractual relationship as a fee developer or manager; provided that such assignment shall not relieve Purchaser of its obligations under this Agreement, regardless of whether such assignment includes an assumption of liability by Purchaser's assignee.

(g)     Entire Agreement.   This Agreement and the Exhibits attached hereto contain the final and entire agreement between the parties hereto with respect to the sale and purchase of the Property and are intended to be an integration of all prior negotiations and understandings.   Purchaser and its agents, and Seller and its agents, shall not be bound by any terms, conditions statements, warranties or representations, oral or written, not contained herein. No change or modifications to this Agreement shall be valid unless the same is in writing and signed by the parties hereto.  No waiver of any of the provisions of this Agreement shall be valid

13



unless the same is in writing and is signed by the party against with which it is sought to be enforced.

(h)    Risk of Loss.  The risk of loss to the Property shall remain with Seller and shall pass to Purchaser simultaneously with Seller's delivery of a deed to the Property to Purchaser or Purchaser's agent at Settlement.

(i)    Time of the Essence.  Time shall be of the essence in the performance of each of the parties' respective obligations contained in this Agreement.

(j)    Survival.  Except for the Seller's representations and warranties set forth in Section 13 herein and any Deliveries by Seller which shall survive Settlement and delivery of the deed for a period of six (6) months and shall not be merged therein, all other terms and provisions of this Agreement shall not survive Settlement and delivery of the deed and shall be merged therein.

(k)    Exhibits.  The Exhibits attached hereto is hereby incorporated herein by this reference for all purposes.

(l)    Partial Invalidity.  If any term or provision of this Agreement or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

(m)    Enforcement.  In the event either party hereto fails to perform any of its obligations under this Agreement or in the event a dispute arises concerning the meaning or interpretation of any provision of this Agreement, the defaulting party or the party not prevailing in such dispute, as the case may be, shall pay any and all costs and expenses incurred by the other party in enforcing or establishing its rights hereunder, including, without limitation, court costs and attorneys' fees.

n)    Waiver of Jury Trial.  Seller and Purchaser waive trial by jury in any action, proceeding or counterclaim brought by either of them against the other on any matter arising out of or in any way connected with this Agreement.

IN WITNESS WHEREOF the parties hereto have executed this Agreement under seal on the date or dates set forth below.

WITNESS:                                      PURCHASER:

_Asaad Hassan_                          By: ___Eael C. Hassa___

                                                   1723 Wisconsin Avenue LLC and1728   Wisconsin  Avenue
                                                   LLC

14

WITNESS:                              SELLER:

_____     By: _____
                                    Bepina Kunin Charitable Remainder Trust

                                    8/14/2015



EXHIBIT A

LEGAL DESCRIPTION OF REAL PROPERTY





# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

1723 WISCONSIN AVENUE LLC et al

    Vs.                               C.A. No.      2015 CA 008296 B

ANA MARINOVIC

## INITIAL ORDER AND ADDENDUM

    Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

    (1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

    (2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

    (3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

    (4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

    (5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

    (6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                        Chief Judge Lee F. Satterfield

Case Assigned to: Judge JOHN M MOTT
Date: _October 28, 2015_
Initial Conference: 10:00 am, Friday, January 29, 2016
Location: Courtroom 517
           500 Indiana Avenue N.W.

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc